IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY MARTIN | : | CIVIL ACTION |
| v. | : | |
| ALAN TURNER, ET AL. | : | NO. 10-1874 |

MEMORANDUM

**Padova, J.**                                                                                                                                  February 18, 2011

Plaintiff Larry Martin commenced this malpractice and breach of contract action against his former counsel, Alan Turner and Turner & McDonald, P.C. (collectively, "Turner"), after Turner failed to a file a UCC-3 continuation statement in connection with a security interest that Plaintiff held. Presently before the Court is Turner's Motion to Disqualify Plaintiff's Counsel. For the reasons that follow, we deny the Motion.

**I.  BACKGROUND**

Plaintiff retained Turner in March, 2001, to assist him in recovering on a judgment note reflecting a debt that a company called Polymer Dynamics, Inc. ("PDI") owed to Plaintiff. In October, 2001, Turner finalized a settlement agreement between Plaintiff and PDI. While the parties dispute the precise nature of the transaction, the parties generally agree that pursuant to the settlement, Plaintiff received from PDI a security interest in a claim that PDI was asserting against Bayer Corporation (the "Bayer collateral"). On October 26, 2001, Turner filed a UCC-1 financing statement on Plaintiff's behalf in connection with Plaintiff's security interest in the Bayer collateral. In 2004, PAFCO, another creditor of PDI, recorded its own security interest in the Bayer collateral. In 2005, PDI obtained a verdict against Bayer Corporation in the amount of approximately $ 12.5

million (the "Bayer proceeds"). In October, 2006, five years after Turner filed the initial UCC-1 financing statement, Turner neither filed a UCC-3 continuation statement nor advised Plaintiff to do so. In August, 2008, the owner of PDI told Plaintiff that his UCC-1 financing statement had lapsed and that Plaintiff had lost the priority of his security interest to PAFCO. That same month, Plaintiff terminated his relationship with Turner and retained Weir & Partners LLP ("Weir"). Ultimately, none of the Bayer proceeds were paid to Plaintiff.

On April 27, 2010, Weir filed a Complaint on behalf of Plaintiff alleging that Turner had committed malpractice and breached its contract with Plaintiff when it failed either to file a UCC-3 continuation statement to maintain the perfected status of Plaintiff's security interest in the Bayer collateral or to advise Plaintiff to do so. On June 25, 2010, Turner filed an Answer in which it admitted that it neither filed a continuation statement nor advised Plaintiff to file one.

On January 13, 2011, Weir filed a Motion for Summary Judgment on behalf of Plaintiff arguing that Plaintiff is entitled to summary judgment in his favor because, as a matter of law, the filing of a continuation statement was necessary to maintain the perfected status of Plaintiff's security interest in the Bayer collateral and because Turner admits that it did not file a continuation statement or advise Plaintiff to do so. Prior to responding to Plaintiff's Motion for Summary Judgment, Turner filed a Motion to Disqualify Plaintiff's Counsel, arguing that the filing of a continuation statement was not necessary, that Plaintiff's security interest in the Bayer collateral remained perfected after October, 2006, and that Weir could have prevented Plaintiff's losses by formally objecting to the distribution of the Bayer proceeds or by asserting claims against the attorney who distributed the Bayer proceeds, the owners of PDI and PAFCO, and those PDI creditors who received distributions. Accordingly, Turner argues, Weir was a superseding cause of Plaintiff's

damages and failed to mitigate those damages. Turner moves to disqualify Weir on the grounds that Weir's interest in avoiding liability creates a concurrent conflict of interest between Weir and Plaintiff and that Walter Weir and Susan Verbonitz, the Weir attorneys handling Plaintiff's case, will be necessary witnesses at trial.

## II. LEGAL STANDARD

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980) (citations omitted). However, "motions to disqualify are an 'extreme sanction' that should not be imposed lightly." Reg'l Emp'rs' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Trust v. Castellano, Civ. A. No. 03-6903, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009) (quoting Shade v. Great Lakes Dredge & Dock Co., 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999)); see also Wyeth v. Abbott Labs., 692 F. Supp. 2d 453, 457 (D.N.J. 2010) ("'[D]isqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.'" (quoting Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB, 944 F. Supp. 341, 345 (D.N.J. 1996))). "[M]otions to disqualify opposing counsel are disfavored . . . not only because disqualification robs one's adversary of her counsel of choice, but also because of the risk . . . that one could subvert the ethical rules in an attempt to use them as a procedural weapon." Wolf, Block, Schorr & Solis-Cohen LLP, Civ. A. No. 05-6038, 2006 WL 680915, at *1 (E.D. Pa. Mar. 9, 2006) (citing Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994), Commonwealth Ins. Co. v. Graphix Hotline, Inc., 808 F. Supp. 1200, 1203 (E.D. Pa. 1992), Hamilton v. Merrill Lynch, 645 F. Supp. 60, 61 (E.D. Pa. 1986), and Pa. Rules of Prof'l Conduct, Preamble and Scope ¶ 19 ("[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural

weapons.")); see also Caracciolo v. Ballard, 687 F. Supp. 159, 160-61 (E.D. Pa. 1988) ("The Code of Professional Responsibility is applied to deter professional misconduct, and to preserve the profession's standing in the community-it was not intended as an addition to the depressingly formidable array of dilatory strategies already part of the litigator's arsenal.").

"'The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible'" under the applicable Rules of Professional Conduct. Castellano, 2009 WL 1911671, at *2 (quoting Cohen, 844 F. Supp. at 1067). "'Vague and unsupported allegations are not sufficient to meet this standard." Id. (quoting Cohen, 844 F. Supp. at 1067). Rather, "disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case," and, even upon such a finding, "disqualification never is automatic." Miller, 624 F.2d at 1201 (citations omitted). Thus, "the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." Id. In making this determination, we "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Id. (citations omitted).

### III. DISCUSSION

#### A. Conflict of Interest

The first basis for Turner's Motion to Disqualify Plaintiff's Counsel is Turner's argument that Weir's interest in avoiding its own malpractice liability creates a concurrent conflict of interest between Weir and Plaintiff. Turner argues that, because of this conflict of interest, Weir "is now taking positions on Plaintiff's behalf which benefit counsel but harm Plaintiff." (Defs.' Mot. to

Disqualify at 2; see also Defs.' Mem. at 7-9.) Specifically, Turner argues that Weir's contention that the filing of a UCC-3 continuation statement was necessary to maintain the perfected status of Plaintiff's security interest in the Bayer collateral benefits Weir – by limiting its potential liability for failing to formally object to the distribution of the Bayer proceeds or to assert claims against the attorney who distributed the Bayer proceeds, the owners of PDI and PAFCO, and those PDI creditors who received distributions – but harms Plaintiff by foreclosing other potential sources of recovery. Weir counters that the filing of the UCC-3 continuation statement was necessary and that Turner has moved to disqualify Weir as a tactic to increase Weir's potential expenses and to pressure Weir to compromise during settlement negotiations. Weir further argues that Plaintiff has knowingly and intelligently waived any conflict of interest that may exist.

"The Local Rules of the United States District Court for the Eastern District of Pennsylvania incorporate the Pennsylvania Rules of Professional Conduct, which the Supreme Court of Pennsylvania has adopted." Castellano, 2009 WL 1911671, at *2 (citing E.D. Pa. Local R. 83.6(IV)(B)). Rule 1.7 of the Pennsylvania Rules of Professional Conduct provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent.

Pa. Rules of Prof'l Conduct 1.7. Thus, even if there is a "significant risk" that "a personal interest of the lawyer" will "materially limit[]" the lawyer's representation of a client, continued representation is permissible if the requirements of Rule 1.7(b) are satisfied. Id.

Weir argues that the requirements of Rule 1.7(b) are satisfied here. With respect to the first requirement of Rule 1.7(b), Weir "represents that the interests of its client will not be adversely affected by its continued representation of him" and argues that its belief that it will be able to competently and diligently represent Plaintiff is reasonable. (Pl.'s Mem. at 9-10.) Turner asserts, in a February 8, 2011 letter to the Court, that Weir's belief that it can competently and diligently represent Plaintiff is unreasonable. It references a Comment to the Pennsylvania Rules of Professional Conduct, which states that "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Pa. Rules of Prof'l Conduct 1.7 cmt. 10. Contrary to Turner's suggestion, however, we do not find that the ethical propriety of Weir's litigation conduct is "in serious question." While we make no findings and reach no conclusions with respect to the substantive legal issues raised on summary judgment, we note that Weir has thoroughly briefed and thoughtfully argued its legal position, and that position seems neither frivolous nor clearly sacrificial of Plaintiff's interests. Moreover, upon recognition that Weir "knows the intricacies of this case far better than the court," we find Weir's belief that it can competently continue its representation to be reasonable. See Kaiser v. Stewart, Civ. A. No. 96-6643, 1997 WL 186329, at *3 (E.D. Pa. Apr. 10, 1997).

With respect to the second and third requirements in Rule 1.7(b), Turner has not identified any provision of law that prohibits Weir's representation of Plaintiff, nor has Turner argued that Weir's representation of Plaintiff involves the assertion of a claim by one client against another in the same litigation or other proceeding before a tribunal. Accordingly, we conclude that the first three requirements for continued representation under Rule 1.7(b) are satisfied.

The fourth requirement for continued representation notwithstanding a conflict of interest is that "each affected client give informed consent." Pa. Rule of Prof'l Conduct 1.7(b)(4). The Pennsylvania Rules of Professional Conduct define informed consent as "consent . . . to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Pa. Rules of Prof'l Conduct 1.0(e); see also Brennan v. Independence Blue Cross, 949 F. Supp. 305, 308 (E.D. Pa. 1996) ("Attorneys must consult with their clients about potential conflicts of interest, and must disclose the facts and circumstances surrounding the conflicts to such an extent that the clients appreciate the significance of the conflict."). Weir has submitted an Affidavit signed by Plaintiff, in which Plaintiff states that he "ha[s] been given a copy of and reviewed the motion to disqualify" and "fully understand[s] the conflict of interest which has been raised by the defendants in the motion." (02/07/11 Aff. of Larry Martin, attached as Ex. A to Pl.'s Mem., ¶ 3.) Plaintiff further states that his attorneys "have advised [him] orally and in writing of all potential conflicts of interest in [their] continued representation." (Id. ¶ 4.) Plaintiff also states that his attorneys "have informed [him] of the rules governing their professional conduct as they relate to their representation of [him] involving matters giving rise to a conflict of interest." (Id. ¶ 5.) Plaintiff concludes by expressly waiving "all conflicts of interest and any potential conflicts of interest that may arise in the

representation of [him] by [Weir] and, specifically, by Mr. Weir and Ms. Verbonitz, in this case." (Id. ¶ 6.) Based on these clear statements in Plaintiff's affidavit, we comfortably conclude that Plaintiff has given informed consent to Weir's continued representation of him.[1]  See Jackson v. Rohm & Haas Co., Civ. A. No. 05-4988, 2008 WL 3930510, at *4 (E.D. Pa. Aug. 26, 2008).

Having found that all four elements of Rule 1.7(b) are satisfied, we conclude that Turner has failed to meet its "burden of clearly showing that continued representation would be impermissible'" under Rule 1.7. Castellano, 2009 WL 1911671, at *2 (quoting Cohen, 844 F. Supp. at 1067); see also Kaiser, 1997 WL 186329, at *3. Accordingly, we cannot conclude "that disqualification is an appropriate means of enforcing [Rule 1.7]." Miller, 624 F.2d at 1201. We therefore deny Turner's Motion to Disqualify Plaintiff's Counsel insofar as it rests on Rule 1.7.

    B.    Necessary Witness

The second basis for Turner's Motion to Disqualify Plaintiff's Counsel is Turner's argument that the Weir attorneys handling this case will be necessary witnesses at trial. Rule 3.7 of the Pennsylvania Rules of Professional Conduct provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," unless certain conditions are met. Pa.

---

[1] While we recognize that some conflicts of interest "may be so severe as to impede the fair operation of the courts and preclude continued . . . representation, regardless of any waiver," Hesling v. Avon Grove Sch. Dist., Civ. A. Nos. 02-8565, 03-5795, 04-4874, 2007 WL 1030096, at *3 (E.D. Pa. Mar. 30, 2007) (citations omitted), Turner has not argued that this is such a conflict and, indeed, it is not. Unwaivable conflicts are "most likely to arise in the criminal context," where "the defendant's constitutional right under the Sixth Amendment to effective assistance of counsel" is implicated, Kaiser, 1997 WL 186329, at *3, and generally involve evidence that the attorney has, in one form or another, acted criminally along with or on behalf of the defendant whom he represents, see, e.g., United States v. Merlino, 349 F.3d 144, 149-51 (3d Cir. 2003); United States v. Jones, 381 F.3d 114, 120 (2d Cir. 2004). Such conflicts typically "threaten the 'confidence and respect of the community towards its bench and bar.'" Hesling, 2007 WL 1030096, at *3. We perceive no such threat here. Accordingly, we conclude that Weir's continued representation of Plaintiff will not "impede the fair operation of the courts." Id.

8

Rules of Prof'l Conduct 3.7(a). By its terms, however, the Rule only prohibits a lawyer who is likely to be a necessary witness from acting as an advocate "*at a trial*." Id. (emphasis added); see also Evans v. Chichester Sch. Dist., 533 F. Supp. 2d 523, 539 (E.D. Pa. 2008) (holding that "Rule 3.7 only pertains to counsel's actions at trial" (citing Javorski v. Nationwide Mut. Ins. Co., No. 06-1071, 2006 WL 3242112, at *9 (W.D. Pa. Nov. 6, 2006), and Foster v. JLG Indus., 372 F. Supp. 2d 792, 798-99 (M.D. Pa. 2005))); George v. Wausau Ins. Co., Civ. A. No. 99-6130, 2000 WL 276915, at *2 (Rule 3.7 "only bars representation at trial. An attorney may continue to represent a client in an action in which he will be called as a witness up to the actual trial in the case." (listing cases)). We see no basis for disqualifying Weir as Plaintiff's counsel prior to the adjudication of Plaintiff's Motion for Summary Judgment and the resolution of other pretrial matters. See George, 2007 WL 276915, at *2 (E.D. Pa. Mar. 13, 2000). Accordingly, we cannot conclude at this stage of the litigation "that disqualification is an appropriate means of enforcing [Rule 3.7]." Miller, 624 F.2d at 1201. We therefore deny Turner's Motion to Disqualify Plaintiff's Counsel insofar as it rests on Rule 3.7.

**IV. CONCLUSION**

For the reasons stated above, we conclude that Plaintiff has validly waived any conflict presented by Weir's representation of him and has validly consented to Weir's continued representation. We further conclude that, even if the Weir attorneys handling this case will be necessary witnesses at trial, disqualification is not appropriate at this time. Accordingly, we deny

9

Turner's Motion to Disqualify Plaintiff's Counsel in its entirety.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.